UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

AVRAHAM PLASTIC SURGERY LLC; BESPOKE
SURGICAL; COMPLETE ORTHOPAEDICS;
DEVULAPALLI MEDICAL PLLC; FOREST HILL
MEDICAL SERVICES; FRANCESCO GARGANO,
MD; ROWE PLASTIC SURGERY OF NJ, LLC; T.V.
SESHAN, MD; HEALTHSPINE AND ANESTHESIA
INSTITUTE LLC; NORTH SHORE SURGICAL PC;
RIVERHEAD SURGERY, PC; TECH MEDICAL
OFFICE PC; and W MEDICAL CARE PC,

                       Petitioners,

          -against-

AETNA, INC.; ANTHEM, INC.; BLUE CROSS BLUE
SHIELD FEDERAL EMPLOYEE PROGRAM; CIGNA
HEALTH AND LIFE INSURANCE COMPANY;
EMBLEMHEALTH, INC.; OSCAR HEALTH, INC.;
UNITED HEALTHCARE INSURANCE COMPANY OF
NEW YORK d/b/a THE EMPIRE PLAN; UNITED
HEALTHCARE SERVICES, INC.; UNITED
HEALTHCARE; PROPEER RESOURCES, LCC; and
ABC CORPORATIONS 1-10 (Names Fictitious),

                      Respondents.
------------------------------------------------------------------X

**REPORT &
RECOMMENDATION**

25-CV-784 (OEM) (SDE)

**SETH D. EICHENHOLTZ**, United States Magistrate Judge:

      Petitioners Avraham Plastic Surgery LLC, Bespoke Surgical, Complete Orthopaedics,

Devulapalli Medical PLLC, Forest Hill Medical Services, Francesco Gargano, MD, Rowe Plastic

Surgery of NJ, LLC, T.V. Seshan, MD, Healthspine and Anesthesia Institute LLC, North Shore

Surgical PC, Riverhead Surgery, PC, Tech Medical Office PC, and W Medical Care PC

(collectively, "Petitioners") bring this petition pursuant to the No Surprises Act, 42 U.S.C.

§ 300gg-111(a)(3)(E)(i) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 seeking to vacate

108 final arbitration awards of zero dollars issued by respondent ProPeer Resources, LLC ("ProPeer" or "Respondent ProPeer") in favor of nine respondent health insurers, Aetna, Inc. ("Aetna"), Anthem, Inc. ("Anthem"), Blue Cross Blue Shield Federal Employee Program ("BCBS"), Cigna Health and Life Insurance Company ("Cigna"), EmblemHealth, Inc. ("Emblem"), Oscar Health, Inc. ("OHI"), United Healthcare Insurance Company of New York d/b/a The Empire Plan ("United Healthcare of New York"), United Healthcare Services, Inc. ("United Healthcare Services"), and United Healthcare Insurance Company ("United Healthcare") (collectively, "Insurers" or "Respondent Insurers"). *See* Amended Petition ("Am. Pet."), Dkt. No. 37. In advance of an initial conference with the undersigned, Petitioners sought limited discovery as to Respondent ProPeer. *See* Dkt. No. 85.

Respondents oppose the Amended Petition, arguing ProPeer's award of zero dollars in each of the 108 proceedings is permissible under the relevant dispute resolution process. *See* Dkt. Nos. 65; 66; 67; 69; 70; 73; 74; 75. Respondents also oppose any discovery in this proceeding, which they argue is a summary proceeding. *See* Dkt. No. 85. Respondent ProPeer further argues that it should be dismissed from this action because it is immune from suit as an arbitrator, *see* Dkt. Nos. 79; 99, and Respondents United Healthcare and OHI contest Petitioners' standing to bring claims against them. *See* Dkt. Nos. 70; 75. Should the Court allow the Amended Petition to proceed, the nine Respondent Insurers collectively move to sever this action under Fed. R. Civ. P. 21. *See* Motion to Sever ("Mot. to Sever"), Dkt. No. 72.

On July 29, 2025, the Honorable Orelia E. Merchant, United States District Judge, referred the petition, as well as the Motion to Sever, to the assigned United States Magistrate Judge for a Report and Recommendation. *See* Order dated 7/29/2025. On August 19, 2025, this matter was transferred to the undersigned. *See* Order dated 8/19/2025. For the reasons outlined below, the

undersigned respectfully recommends dismissing Respondents ProPeer, OHI, and United Healthcare from this action, as well as denying the Amended Petition on the merits as to all respondents. Given these recommendations, the undersigned recommends that Respondents' Motion to Sever be denied as moot.

## BACKGROUND

### I.    The No Surprises Act and Its Dispute Resolution Process

In 2020, Congress passed the No Surprises Act ("NSA"),[1] with the goal of protecting patients who are treated with out-of-network healthcare services in an emergency only to receive large, unexpected medical bills afterward.  *See* 42 U.S.C. § 300gg-111; H.R. Rep. No. 116–615 (2020), at 47–49.  The law prohibits healthcare providers from billing insurance plan members directly for qualifying items or services, instead creating a uniform process for patients' health insurance plans to reimburse healthcare providers.  *Id.*  The NSA also provides for an Independent Dispute Resolution ("IDR") process by which medical providers and health insurers can determine the reimbursement rates for qualifying out-of-network items or services if parties are unable to resolve a disputed rate through negotiation.  *See* 42 U.S.C. § 300gg-111(c)(1–5).

The items or services covered under the NSA include emergency services provided by an out-of-network provider, nonemergency services provided by an out-of-network provider at an in-network facility, and air ambulance services.  *See* 42 U.S.C. § 300gg-111(a)(3)(C); 42 U.S.C. § 300gg-131(a), 132(a), 112.  For the covered items and services, the out-of-network rate is determined by a certified IDR entity ("CIDRE" or "IDRE") selected by the parties or appointed by the U.S. Department of Health and Human Services ("HHS").  *See* 42 U.S.C. § 300gg-111(c)(4)(F).  The CIDRE determines whether an item or service at issue qualifies for the IDR

---

[1] Effective January 1, 2022.

process, then determines the value of the item or service. *See id.* at (c)(5). The value is determined through a process known as "baseball-style" arbitration, wherein each party presents an offer and the CIDRE selects one of the two offers as the appropriate reimbursement amount. *Id.* at (B–D); *see also* H.R. Rep. No. 116–615 (2020), at 32–34, 57. The CIDRE must choose one of the numbers offered by the parties; in other words, the CIDRE is not free to independently determine the appropriate reimbursement amount. *See* 42 U.S.C. § 300gg-111(c)(5)(B–D).

## II.    The Amended Petition

The Amended Petition seeks to vacate 108 IDR awards of zero dollars for medical items or services covered by insurance and rendered by out-of-network medical service providers. *See* Am. Pet. at 4–5. This includes some awards of zero dollars where the insurance carriers had already made partial payment for the items or services at issue. *See id.* Petitioners are the thirteen medical service providers who rendered out-of-network healthcare services to various Insurers' members. *See id.* at 6. Respondent Insurers are the nine health insurance plans from whom Petitioners sought reimbursement through the IDR process established in the NSA. *See id.* at 6. Respondent ProPeer is the CIDRE, acting as arbitrator, who issued each award. *See id.* at 11.

## III.    Procedural Background

On February 11, 2025, Petitioners filed this action seeking to vacate the 108 IDR awards. *See* Petition, Dkt. No. 1. On April 9, 2025, Petitioners filed an Amended Petition, adding ProPeer as a Respondent, making slight clarifications to the original allegations, and recalculating the damages total. *See id.*; Am. Pet. On July 23, 2025, Respondents opposed the Amended Petition, arguing that given the summary nature of this proceeding, the Court should deny it on its merits. *See* Dkt. Nos. 65; 66; 67; 69; 70; 73; 74; 75. Respondents United Healthcare and OHI argue in their respective responses to the Amended Petition that they should be dismissed because

4

Petitioners lack standing as to them, *see* Dkt. Nos. 70; 75, which Petitioners do not contest. *See* Petitioners' Reply to Respondents' Oppositions ("Pet'rs' Reply"), Dkt. No. 96 at 13. On July 28, 2025, Respondent ProPeer submitted a separate response arguing that it possesses arbitrator immunity and, thus, should be dismissed from this action. *See* Dkt. No. 79.

In addition to their responses opposing the Amended Petition, Respondent Insurers moved to sever this action as to each of them pursuant to Fed. R. Civ. P. 21. *See* Mot. to Sever. Petitioners filed a separate request for limited discovery as to ProPeer, which Respondents oppose. *See* Dkt. No. 85. Presently before the Court are these motions, along with the Amended Petition itself.

## LEGAL STANDARD

### I. Scope of Judicial Review Under the NSA

Under the NSA, the CIDRE's determinations are binding on the parties and are not subject to judicial review, except that a party may file a petition seeking vacatur of an IDR award under the limited circumstances listed in § 10(a)(1–4) of the Federal Arbitration Act ("FAA"). *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (incorporating 9 U.S.C. § 10(a)). These provisions permit vacatur of an arbitration award solely in the following four circumstances:

> **"(1)** where the award was procured by corruption, fraud, or undue means;
>
> **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;
>
> **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

9 U.S.C. § 10(a).

## II.  Standard of Judicial Review of Arbitration Awards Under the FAA

"The FAA creates a strong presumption in favor of enforcing arbitration awards and courts have an extremely limited role in reviewing such awards." *Flintlock Constr. Servs., LLC v. Arch Specialty Ins. Co.*, 24-CV-791, 2025 WL 573425, at *1 (2d Cir. 2025) (quotation marks omitted). The confirmation of an arbitration award under the FAA is generally evaluated in "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court" and the Court "must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal citations and quotation marks omitted).  As a summary proceeding, the Court's decision on the award "is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 566 (S.D.N.Y. 2024) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)).  A party seeking to vacate an arbitration award bears the burden of proof and "the showing required to avoid confirmation is very high." *Blair & Co.*, 462 F.3d at 110.

The Second Circuit consistently uses the "narrowest of readings" when considering whether to vacate an arbitration award under § 10(a)(4) of the FAA because the arbitrator "exceeded their powers[.]" *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 342 (2d Cir. 2010) (internal quotation marks omitted).  In other words, a party seeking relief under § 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). "It is not enough to show that the [arbitrator] committed an error—or even a serious error." *Id.* (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).  The focus of the inquiry under § 10(a)(4) is "whether the arbitrators had the power, based on the parties'

6

submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrators correctly decided that issue*." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011) (quotation marks omitted); *see also Stolt-Nielsen S.A.*, 559 U.S. at 671 (noting an arbitrator's decisions can be vacated under § 10(a)(4) "only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice") (cleaned up).

## DISCUSSION

For the reasons outlined below, considering the scope of judicial review, the deference afforded to an arbitrator's awards, and the summary nature of these proceedings, the undersigned respectfully recommends that the Court dismiss Respondents ProPeer, OHI, and United Healthcare from this action and deny the Amended Petition on the merits.  The undersigned also respectfully recommends finding the Motion to Sever to be moot.

### I.    Arbitrator Immunity

The undersigned first considers whether ProPeer is an appropriate respondent in this action and concludes that it is not because it enjoys arbitrator immunity.  Federal courts have long held that arbitrators are immune from damages "for all acts within the scope of the arbitral process." *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990); *see also Linden v. Dist. Council 1707-Afscme*, 10-CV-2164, 2010 WL 2697051, at *3 (S.D.N.Y. July 7, 2010), *aff'd*, 415 F. App'x 337 (2d Cir. 2011), *cert. denied*, 565 U.S. 910 (2011) ("[b]ecause [plaintiff's] claims against the arbitrator relate solely to the arbitral process, [the arbitrator] has immunity from civil liability").  When courts have applied arbitrator immunity, they have "typically done so to prevent arbitral losers from using administrative decisions as a vehicle to

attack, indirectly, the outcomes of completed arbitrations." *Schorr v. Am. Arb. Ass'n Inc.*, 21-CV-5569, 2022 WL 17965413, at *12 (S.D.N.Y. Dec. 27, 2022) (collecting cases).

The NSA may designate IDR decisionmakers as "CIDREs" rather than "arbitrators" and uses the term "IDR" rather than "arbitration," but the role of a CIDRE as a neutral decisionmaker making a binding judgment to resolve a dispute between two parties makes them virtually indistinguishable from arbitrators and functionally akin to judges. *See*, *e.g.*, *Reiner v. Paneth*, 24-CV-4914, 2025 U.S. Dist. LEXIS 193669, at *24 (E.D.N.Y. Sept. 30, 2025) ("Arbitral immunity, similar to the judicial immunity from which it derives, protects functions rather than people[.]"); *Schorr*, 2022 WL 17965413, at *9 ("[T]he scope of arbitral immunity is defined by the *functions* it protects and serves[.]") (internal quotation marks omitted). The incorporation of § 10(a) of the FAA, along with the NSA's legislative history, demonstrates that Congress contemplated the IDR process and CIDREs as analogous to arbitration and arbitrators. *See* H.R. Rep. No. 116–615, at 56 (referencing that the solution to address surprise billing is "the IDR process, also referred to as arbitration" and that "the IDR process is mediated by a third-party arbitrator").

Practical implications also weigh in favor of finding immunity. The IDR process is overwhelmed beyond what Congress imagined: although the government initially predicted around 17,000 NSA IDR disputes per year, recent CMS reports show over 1,400,000 IDR disputes were submitted in the first half of 2025 alone. *See* Requirements Related to Surprise Billing; Part II, 86 Fed. Reg. 55980, 56056 (Oct. 7, 2021); Independent Dispute Resolution Reports (2025), https://www.cms.gov/nosurprises/policies-and-resources/reports.[2] CIDREs may become reluctant

---

[2] More detailed reporting from 2022 and 2023 shows over 200,00 NSA disputes were submitted in 2022, and over 670,000 NSA disputes were submitted in 2023. *See* No Surprises Act Independent Dispute Resolution (IDR) Process Data Analysis for the First Half of 2023 (2025), https://www.congress.gov/crs-product/R48058; No Surprises Act (NSA) Independent Dispute Resolution (IDR) Process Data Analysis for 2023 (2025), http://www.congress.gov/crs-product/R48359. IDR entities scaled up much their operations during this time frame, closing 311,863 disputes in 2023, over five times more than resolved in 2022. *See id.*

to participate in an already overwhelmed arbitration system if doing so involves being "caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit." *Reiner*, 2025 U.S. Dist. LEXIS 193669, at *9 (quoting *Austern*, 898 F.2d at 886).

The Fifth Circuit recently held that CIDREs operating under the NSA are entitled to arbitrator immunity. *See Guardian Flight, L.L.C. v. Med. Evaluators of Texas ASO, L.L.C.*, 140 F.4th 613, 622–623 (5th Cir. 2025) ("*Guardian Flight II*"). There, the Court reasoned that, "[l]ike judges and arbitrators, CIDREs are neutral arbiters of payment disputes with no stake in the underlying controversy." *Id.* at 623. Petitioners attempt to distinguish *Guardian Flight II*, arguing that case involved different questions under the NSA and at issue here is a "mass corruption of the IDR process" where ProPeer is the "primary, if not the sole, cause" of this lawsuit. Pet'rs' Reply at 11–12. However, these distinctions in allegations against the CIDRE do not disturb the reasoning behind the application of arbitrator immunity to CIDREs, which is that they act as and ought to be treated as arbitrators.[3] *See De Oliveira v. Tenet Healthcare*, 25-CV-1683, 2025 WL 3241217, at *21 (S.D.N.Y. Nov. 20, 2025) (plaintiff's allegations that an arbitrator "exceeded its jurisdictional powers or authority" were insufficient to overcome arbitrator immunity); *Bletas v. Deluca*, 11-CV-1777, 2011 WL 13130879, at *5 (S.D.N.Y. Nov. 15, 2011) (plaintiff's allegations that an arbitrator "exceeded her powers and authority, committed misconduct" and engaged in "corruption and fraud" during the arbitration process were insufficient to overcome arbitrator immunity).

---

[3] The District of Connecticut recently considered the differences between arbitration under the FAA and IDR under the NSA, namely, that IDR decisions are rendered in the absence of an arbitration agreement and payment obligations are immediately triggered without the need for judicial confirmation. *See Guardian Flight LLC* v. *AETNA Life Insurance Co.*, 789 F.Supp.3d 214, 227 (D. Conn. May 14, 2025) ("*Guardian Flight III*"). These differences do not speak to the function of CIDREs, who regardless act a neutral, third-party decision-makers. As such, the District of Connecticut found that as with most arbitrations, the NSA provides for a private right of action to enforce awards. *See id*.

Finally, it is unclear what, if anything, ProPeer's presence as a respondent adds to the Petitioners' ability to seek redress. As the Eleventh Circuit recently recognized, the presence of a CIDRE in an NSA lawsuit is "not necessary for a party to bring a challenge to an IDR award[.]"[4] *REACH Air Medical Services LLC v. Kaiser Foundation Health Plan et al.*, 24-10135, 2025 WL 3222820, at *9 (11th Cir. Nov. 19, 2025). Along with case law and policy considerations, this lack of purpose as a named respondent also weighs toward finding immunity. Thus, the undersigned respectfully recommends that the Court find that ProPeer enjoys arbitrator's immunity and dismiss it from this action.

## II.    Standing As To Claims Against Respondents Oscar Health, Inc. and United Healthcare Insurance Company

OHI contends it is not a proper party to this action as it was not involved in any of the IDR disputes at issue. *See* Dkt. No. 70 at 5; Decl. of Melissa Curtin, Dkt. No. 71 ¶ 5; Dkt. No. 100. OHI maintains that it "is not a health plan or insurer" and thus "cannot be party to any IDR proceeding" under the NSA. Dkt. No. 70 at 5 (citing 42 U.S.C. § 300gg-111(c)(1)(B)). Further, of the three awards at issue purportedly against OHI, only the DISP-1409506 award is attached to the Amended Petition, and such award was issued in favor of Oscar Insurance Corporation, a different entity than OHI. *See* Am. Pet. Exh. B at 17–20; Dkt. No. 70 at 5; Decl. of Melissa Curtin,

---

[4] Several Respondents argue that remand is not an available remedy because, although the FAA provides "discretion" for a court to "direct a rehearing by the arbitrators" if an award is vacated and the time within which the arbitrator must issue the award has not expired, *see* 9 U.S.C. § 10(b), that provision of the FAA is not incorporated into the NSA. *See* 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II) (incorporating only 9 U.S.C. § 10(a)(1–4)). Even if that provision were incorporated to the NSA, Respondents argue that the 30-day period by which an arbitrator must issue an award under the FAA has ended. 9 U.S.C. § 10(b). Conversely, the Eleventh Circuit recently stated that "is undisputed that, under the NSA, the district court does have such authority, and may remand the case back to the IDR entity to start arbitration again, should it find that one of the grounds in 9 U.S.C. § 10(a)(1)–(4) has been satisfied." *REACH Air Medical Services LLC*, 2025 WL 3222820, at *9. The Fifth Circuit, too, in observing that the NSA permits judicial review only under the limited circumstances of § 10(a)(1–4) of the FAA, noted that a court's exercise of "review" necessarily includes the power to "remand, modify, or vacate orders by a subordinate body." *Guardian Flight II*, 140 F.4th at 620 (emphasis removed) (internal quotation marks omitted). As the undersigned recommends denying the Amended Petition, the Court need not reach the issue of whether remand is available in this particular instance.

Dkt. No. 71 ¶ 5; Dkt. No. 100 at 2.  Petitioners do not argue otherwise.  Instead, they "do not take a position," on whether OHI is a proper respondent, noting that "if the Court accepts" OHI's position, this matter "can continue in [OHI's] absence[.]"  Pet'rs' Reply at 13.

Similarly, in a joint brief filed by the three "United" Respondent Insurers (United Healthcare Insurance Company of New York, United Healthcare Services, Inc., and United Healthcare Insurance Company), they argue that Petitioners lack standing in regard to United Healthcare Insurance Company.  According to the United brief, IDR award DISP-1667978 is the only award which Petitioners attribute to Respondent United Healthcare Insurance Company. Similar to OHI, United Healthcare Insurance Company has made a showing that it was not the primary payor in that proceeding.  *See* Dkt. No. 75 at 9–10 (citing Schwartz Decl. ¶ 2, Ex. 1 at 1). As with OHI, Petitioners "do not take a position" on whether United Healthcare Insurance Company is a proper Respondent.  Pet'rs' Reply at 13.

To establish standing against a defendant or respondent, a plaintiff or petitioner bringing an action bears the burden of alleging an "injury fairly traceable to the defendant's allegedly unlawful conduct." *California v. Texas*, 593 U.S. 659, 659 (2021) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)) (emphasis removed).  Given Respondent OHI and United Health Insurance Company's showings that they were not involved in the IDR proceedings at issue, and Petitioners' decision to "take no position" on whether they have standing against them, the undersigned finds that Petitioners do not have standing against OHI and United Healthcare Insurance Company.[5]  Thus, the undersigned respectfully recommends that they be dismissed from this action.

---

[5] United also argues that in IDR award DISP-1655646, the relevant Petitioner defaulted in the proceeding against United Healthcare Insurance Company of New York and thus Petitioners lack standing to bring a claim regarding that award.  *See* Dkt. No. 75 at 9–10.  Petitioners do not address whether they believe they have standing as it

### III.    Petitioners' Request to Vacate the IDR Awards

Turning to the merits of the Amended Petition, the undersigned finds that Petitioners do not set forth a sufficient basis to vacate the 108 awards at issue.  Petitioners argue the IDR awards at issue were determined under a "misapplication of law" and demonstrate that ProPeer "exceeded its arbitration powers[,]" principally relying on ProPeer's decision to issue zero-dollar awards when those offers were made by Respondents.  Am. Pet. ¶¶ 1, 64.  However, as outlined below, "misapplication of law" does not fall within the scope of judicial review under the NSA and FAA, and, even if it did, Petitioners have not established that issuing zero-dollar awards is a misapplication of the law.  Further, Petitioners' vague and occasionally conclusory allegations of misconduct fail to meet the high burden required to demonstrate that ProPeer acted in excess of its powers.

#### A.    The Court Cannot Review the Awards for Legal Error

Petitioners contend that ProPeer engaged in a "misapplication of law" when it issued awards valued at zero dollars.  Am. Pet. ¶ 1.  As a threshold issue, legal error is not one of the limited circumstances by which a court can vacate under § 10(a)(4).  *See*, *e.g.*, *CSC Holdings, LLC v. Int'l Brotherhood of Electricians, Local 1049*, 21-CV-6848, 2022 WL 18859069, at *5 (E.D.N.Y. Dec. 27, 2022) ("As long as the arbitrator even arguably construed or applied the terms of the contract, which he did, the fact that the court is convinced he committed error does not suffice to overturn his decision.") (cleaned up); *Oxford Health Plans LLC*, 569 U.S. at 572 ("So long as the arbitrator was arguably construing the contract . . . . a court may not correct his mistakes under

---

pertains to this award, nor do they provide legal support for the proposition that standing exists when seeking to overturn an arbitration decision awarded on default.  Although Petitioners' failure to respond to this argument could constitute an abandonment of its claim as to this award, *see*, *e.g.*, *McLeod v. Verizon New York, Inc.*, 995 F.Supp.2d 134, 143–144 (E.D.N.Y. 2014), as there is another IDR award in this action involving United Healthcare Insurance Company of New York, DISP-905100, *see* Am. Pet. Ex. A, the undersigned recommends that they remain a respondent to the petition.

§ 10(a)(4).") (internal quotation marks omitted); *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002) ("Section 10(a)(4) does not permit vacatur for legal errors."). Therefore, to the extent that the Amended Petition is based on purported legal error, it must be denied.

### B.  The Propriety of Zero Dollar Awards

Underpinning much of the Amended Petition is the assumption that a CIDRE should not be issuing an award of zero dollars.  Pet'rs' Reply at 4–5. Petitioners argue that, among other things, a zero-dollar award improperly "conflate[s] the eligibility and valuation determinations under the NSA."  Am. Pet. ¶¶ 13-14.  While Petitioners admit that even a "grave error" of law is insufficient to disturb a CIDRE's decision, they contend that awarding zero dollars is a mistake so extreme as to amount to a "wholesale abdication" of ProPeer's duties as a CIDRE by which vacatur under § 10(a)(4) is still warranted.  Pet'rs' Reply at 3–4.

Yet Petitioners cannot point to any portion of the NSA, its legislative history, or the corresponding federal regulations and guidance[6] which suggests that an award of zero dollars is an improper outcome of the NSA dispute resolution process.  *See generally* Am. Pet.  The opposite appears to be true.  According to the annual report on IDR resolutions by the Centers for Medicare and Medicaid Services ("CMS"), thousands of awards were rendered in favor of a zero-dollar offer from a health insurer in 2024.  *See* Independent Dispute Resolution Reports, Federal IDR PUF For 2024 Q1–Q4, CMS, https://www.cms.gov/nosurprises/policies-and-resources/reports.  Further, as Respondents note, a zero-dollar offer may be a strategic response to what an insurance company

---

[6] Requirements Related to Surprise Billing, 87 Fed. Reg. 52618 (Oct. 25, 2022) (to be codified at 26 C.F.R. pt. 54); Federal Independent Dispute Resolution Process Guidance for Certified IDR Entities ("Federal IDR Guidelines") (2023), https://www.cms.gov/files/document/federal-idr-guidance-idr-entities-march-2023.pdf.

views as an unrealistic demand from a provider. *See* Transcript of Proceedings Held on 9/8/25 ("Tr. 9/8/25"), Dkt. No. 95 at 26–27.

Importantly, under the NSA, CIDREs are *required* to choose between the two offers in front of them, with no liberty to choose a third number or split the difference. *See* 42 U.S.C. § 300gg-111(c)(5)(A) (a CIDRE must "select one of the offers submitted" by the parties "to be the amount of payment for such item or service"); *see also Texas Med. Ass'n v. United States Dep't of Health & Hum. Servs.*, 110 F.4th 762, 768 (5th Cir. 2024) (noting arbitration under the NSA is a "baseball-style" process, in which the CIDRE "must choose one of the two offers as the out-of-network rate"); H.R. Rep. No. 116–615 (2020), at 56–57 (describing "baseball-style" arbitration where "each side submits a price, and the arbitrator chooses one, with both sides bound by the decision"). Therefore, if it is permissible for a party to *submit* a zero-dollar offer as part of the IDR process, the CIDRE is actually *required* to select the zero-dollar offer if, in its judgment as arbitrator, it believes that offer to be the more appropriate of the two offers.

Petitioners thus fail to demonstrate that a zero-dollar award is a violation of ProPeer's duties under the NSA and, regardless, that such a legal error would not fall within the "very narrow set of circumstances delineated by statute and case law" warranting vacatur. *Nicholls v. Brookdale Univ. Hosp. & Med. Ctr.*, 204 F. App'x 40, 43 (2d Cir. 2006) (quotation marks omitted). To the extent that it relies on zero-dollar awards to support its allegations of impropriety, the Amended Petition should be denied.

C.  Petitioners' Other Challenges to the IDR Awards

Petitioners alternatively argue that ProPeer "exceeded its powers" under § 10(a)(4) by engaging in some sort of misconduct, as evidenced by the number of zero-dollar awards issued by ProPeer, along with what Petitioners argue is a repetitive and "boilerplate" rationale. Am. Pet.

¶¶ 49, 64. Petitioners' assertion that the "scores of arbitration awards [] are all rotten to the core[,]"[7] Pet'rs' Reply at 7, is almost entirely conclusory and is insufficient to meet the high burden required to vacate every IDR determination at issue.

### 1. ProPeer's Use of Similar Rationales in Each IDR Award

In support of their argument that ProPeer exceeded its powers, Petitioners attach to the Amended Petition an attorney-made spreadsheet of the challenged IDR awards, with columns identifying the Insurer, Petitioner, dispute number, each party's final offer, relevant Current Procedural Terminology ("CPT") code, date of service, date filed, date of decision, and entity fee for each award. *See* Am. Pet. Ex. A. Additionally, Petitioners provide fourteen "[s]ample determinations for each Insurer," asserting that "[u]pon information and belief. . . nearly every arbitration at issue" contained nearly identical rationale. Am. Pet. ¶¶ 45-48, Exs. B, C, D, E.

The proof, Petitioners contend, lies with the "cookie cutter" explanations used by ProPeer in "nearly every" IDR proceeding at issue. Am. Pet. ¶ 48, Ex. B. Petitioners contend these "boilerplate" and "nearly carbon copy" explanations make it "evident" that "rather than determining the value of the qualified services, ProPeer instead agreed with the Insurers' denials of coverage or the Insurers' statements of ineligibility, disguised as $0.00 value determinations of the services." *Id.* ¶ 49. However, even in situations which require judicial confirmation of the award, "[t]he arbitrator's rationale for an award need not be explained," and in fact, only a "barely colorable justification for the outcome" is necessary to support an arbitrator's decision. *D.H. Blair & Co.*, 462 F.3d at 110 (internal citations and quotation marks omitted); *see also Wallace v. Buttar*,

---

[7] Petitioners take issue with "virtually every other case" cited by Respondents because the reasoning in those cases were each based on a single challenged arbitration award, not a collection of "rotten" awards, as in the instant case. Petitioners' Reply at 7. This is a distinction without a difference, as the law applies equally to a case with 108 petitions to vacate as to a case with one.

378 F.3d 182, 190 (2d Cir. 2004) (noting that "arbitrators are not required to provide an explanation for their decision") (quotation marks omitted).  ProPeer's explanations, while admittedly brief and repetitive, are sufficient to meet the low bar required of CIDREs in elucidating their decisions under the NSA.  *See GPS of New Jersey M.D., P.C.*, 22-CV-6614, 2023 WL 5815821, at *6 (D.N.J. Sept. 8, 2023) (noting that while "[t]he arbitration decision is skimpy in the extreme" the "brevity of [the CIDRE's] decision, alone, does not satisfy [petitioner's] burden of proving that the arbitration award at issue must be vacated").

Further, Petitioners offer no evidence of their theory that these "boilerplate" explanations are covert denials of coverage "disguised" as zero-dollar value determinations.  Am. Pet. ¶ 49. During argument on the Amended Petition, Petitioners' counsel pushed forward allegations of misconduct not specified in the Amended Petition and, he acknowledged, not supported by any available evidence.  *See* Tr. 9/8/25 at 7–13.  In a recent decision, the Eleventh Circuit rejected a similar argument that a CIDRE's determination was an "illegal presumption" in disguise and thereby the arbitrator exceeded its authority.  *REACH Air Medical Services LLC*, 2025 WL 3222820, at *6.  The Eleventh Circuit saw no reason to question the CIDRE's explanation that after reviewing two offers, it determined that the better payment option was the lower offer.  *See id.*; *accord GPS of New Jersey M.D., P.C.*, 2023 WL 5815821, at *9 ("[T]he arbitrator's decision may have reflected no more than a rough determination that [petitioner's] offer was, so to speak, farther out of the ballpark.").

Similarly, the sample awards submitted by Petitioners in this action contain straightforward explanations that ProPeer "consider[ed] all permissible information submitted by both parties" in order to determine which of the two offers was the "appropriate out-of-network rate."  Am. Pet. ¶¶ 45, 48, Ex. B.  In other words, ProPeer stated that it did exactly what is required

of it under the NSA, and there are no allegations in the Amended Petition on which to base a finding to the contrary.

### 2. Frequency of IDR Awards Favoring Insurers

Petitioners also rely on ProPeer's IDR statistics, which they say show a pattern favoring insurers. But, these statistics alone are insufficient to warrant vacatur of the 108 IDR awards at issue. Petitioners argue that, after November 13, 2024, "everything seemed to start to change" and there was an "unusual spike" in zero-dollar awards by ProPeer. Tr. 9/8/25 at 9, 12. As evidence of this change, Petitioners highlight that in the over 1,800 disputes arbitrated by ProPeer since November 13, 2024 containing a health insurer's zero-dollar offer, that zero-dollar offer prevailed 78.59% of the time. Am. Pet. ¶ 62. In disputes during that same period where a health insurer made an offer greater than zero dollars, the medical provider's offer instead prevailed 81% of the time. *See id.* ¶¶ 56, 62. Petitioners also contend that health insurers began submitting less evidence in the IDR process during this same time period, and yet became more likely to prevail on zero-dollar offers. *See id.* ¶ 50. Additionally, Petitioners point to instances where ProPeer ruled in favor of a medical provider's award prior to November 13, 2024, only to rule in favor of an insurer's zero-dollar offer in a more recent award—despite both awards having the same CPT codes. *See id.* ¶ 52 (citing Ex. D).

Petitioners argue these patterns "illustrate ProPeer's systematic implementation of this improper policy." *Id.* ¶ 62. However, correlation does not necessarily indicate causation and, as previously mentioned, the Amended Petition does not allege any sort of collusion or bad faith deal which generated this change in results. *See generally* Am. Pet.; *see also* Tr. 9/8/25 at 7–8. Additionally, it is not dispositive that ProPeer granted different awards in similar fact scenarios. *See, e.g., Rite Aid of N.Y., Inc. v. 1199 SEIU United Healthcare Workers E.*, 704 F. App'x 11, 13

(2d Cir. 2017) (holding that vacatur is not warranted just because an arbitrator's decision "deviate[s] from his reasoning in a different arbitration") (cleaned up).

Petitioners may have discovered a troubling pattern worthy of attention from the agencies tasked with overseeing the IDR process.[8] At minimum, the increase or prevalence of zero-dollar awards demonstrates that this "baseball-style" process "may have failed in its purpose of pushing both sides to the middle." *GPS of New Jersey M.D., P.C.*, 2023 WL 5815821, at *9. However, statistics allegedly evidencing a change in ProPeer's tendencies are insufficient, without more, to meet the FAA's "high hurdle" for vacatur in each award at issue. *Stolt–Nielsen S.A.*, 559 U.S. at 671. Thus, the undersigned cannot find that an increase in the prevalence of these awards warrants vacatur.

### D. Petitioners' Request for Discovery

Having determined that the Amended Petition does not set forth sufficient allegations of misconduct to support vacatur of the IDR awards, the undersigned now considers whether Petitioners are entitled to limited discovery into their allegations of misconduct by ProPeer, *see* Dkt. No. 85, and concludes that they are not.

In a post-arbitration summary proceeding, discovery is "available only in limited circumstances, where relevant and necessary." *Frere v. Orthofix, Inc.*, 99-CV-4049, 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000) (collecting cases). The Court must "carefully control any discovery" to ensure the "promise of a prompt and inexpensive" arbitration procedure. *Tradiverse Corp. v. Luzar Trading S.A.*, 20-CV-3387, 2020 WL 8838055, at *1 (S.D.N.Y. June 23, 2020)

---

[8] The Fifth Circuit recently noted that the NSA provides for some administrative remedies, as HHS can assess penalties for failure to comply with NSA, and CMS maintains an online portal for healthcare providers to submit complaints about the IDR process. *See Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 277 (5th Cir. 2025) ("*Guardian Flight I*"). Congress also mandates a process for HHS to certify and recertify CIDREs and to petition for denial or revocation of a CIDRE's certification. *See* 42 U.S.C. § 300gg-111(c)(4).

(denying a party's request for discovery against an arbitrator). "[A]ny inquiry that is targeted at the arbitrator is particularly suspect, since the arbitrator's coerced involvement in post-award litigation will inevitably intrude upon the arbitrator's quasi-judicial function." *Frere*, 2000 WL 1789641, at *4. Courts in the Second Circuit have held that discovery against arbitrators should only be available where there is "*clear evidence* of impropriety, such as bias or corruption." *TransAtlantic Lines LLC v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc.*, 253 F. Supp. 3d 725, 734 (S.D.N.Y. 2017) (emphasis added) (internal quotation marks omitted).

Petitioners state discovery is justified here because "ProPeer stands accused of impropriety." Dkt. No. 85 at 2. However, Petitioners fail to allege clear evidence that ProPeer engaged in any form of bias, conspiracy, or corruption in rendering the zero-dollar awards at issue. To the contrary, when asked to clarify their allegation of misconduct, counsel for Petitioners candidly acknowledged they were unsure of the basis and suggested that the requested discovery would allow them to possibly develop one. Tr. 9/8/25 at 7, 18. Thus, the request for limited discovery is ungrounded in clear evidence of impropriety and, instead, closer to the classic fishing expedition by which Petitioners seek to comb ProPeer's records hoping to find evidence of what they speculate is nefarious behavior. Such a request cannot form the basis of discovery, especially in a summary proceeding where discovery is tightly controlled. *See*, *e.g.*, *Molecular Dynamics Ltd. v. Spectrum Dynamics Med. Ltd.*, 22-CV-5167, 2022 WL 17418695 (S.D.N.Y. Nov. 28, 2022) (denying limited discovery against an arbitrator where the "request appears solely as a means of prob[ing] the arbitrator's decisionmaking process, which is a forbidden purpose for discovery") (internal quotation marks omitted); *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 899 (2d Cir. 1991) (denying limited discovery against an arbitrator where the petitioner was "simply engaging in a

fishing expedition in an attempt to determine if there is some basis, however farfetched, to prosecute a claim of bias") (internal quotation marks omitted).

As such, the undersigned respectfully recommends denying Petitioners' request for limited discovery as to ProPeer.

### IV.    Motion to Sever

Respondent Insurers move to sever claims under Fed. R. Civ. P. 21.  *See* Mot. to Sever. Respondent Insurers argue the 108 IDR awards at issue "involve different parties, patients, and services that have nothing to do with each other" and thus do not arise out of the same transaction or occurrence as required by Rule 20(a)(2)(A).  *Id.* at 3.  As the undersigned has recommended that the Court deny the Amended Petition, the undersigned also respectfully recommends finding the Motion to Sever to be moot.

### CONCLUSION

This Court's ability to review the kinds of arbitration decisions at issue here is limited and the threshold to vacate is necessarily high.  The facts and circumstances alleged in the Amended Petition are not sufficient to meet this threshold, nor are Petitioners entitled to discovery into their allegations.  For these reasons, the undersigned respectfully recommends dismissing Respondents ProPeer, OHI, and United Healthcare Insurance Company from this action and denying the Amended Petition to Vacate.  The undersigned also recommends finding Respondent Insurers' Motion to Sever to be moot.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2).  If any party fails to file timely objections to this Report and Recommendation, it will waive any right to further judicial review of the decision.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also*

*Kotlyarsky v. United States Dep't of Just.*, 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023);

*Small v. Sec'y of HHS*, 892 F.2d 15, 16 (2d Cir. 1989).

**SO ORDERED.**

Dated:  Brooklyn, New York
        December 30, 2025

/ S/ *SETH D. EICHENHOLTZ*
SETH D. EICHENHOLTZ
United States Magistrate Judge
Eastern District of New York